**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | * |                          |
| **HELIUMCLOUD, LLC,**    | * |                          |
| **Plaintiff,**           |   |                          |
|                          | * |                          |
| **v.**                   |   | **Case No.: GJH-21-1212**|
|                          | * |                          |
| **KWITU, INC.,** *et al.*,| * |                          |
| **Defendants.**          |   |                          |
|                          | * |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In this action, Plaintiff HeliumCloud, LLC, alleges breach of contract, misappropriation of trade secrets, unjust enrichment, indemnification, aiding and abetting, and civil conspiracy against Defendants NuDawn Tech, and NuDawn Tech, LLC ("NuDawn Defendants"), and KWITU, Inc., Lilian Okech, Doreen Selly, and Aileen Mucangi ("KWITU Defendants"). ECF No. 26-2. Presently pending is Plaintiff's Motion for Leave to File an Amended Complaint. ECF No. 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Court will grant leave to amend.[1]

---

[1] Additionally pending are the Joint Motion for Extension of Time to Complete Discovery, ECF No. 41, the Motion for Extension of Time, ECF No. 32, and the Consent Motion to Amend or Correct the Scheduling Order, ECF No. 24, which are granted. Previously, this Court denied Defendant KWITU's Motion for a Temporary Restraining Order, ECF No. 11. The parties may file motions for preliminary injunctions after discovery.

## I.      BACKGROUND[2]

Plaintiff HeliumCloud is a Delaware company with its principal place of business in Montgomery County, Maryland. ECF No. 26-2 ¶ 3.[3] Plaintiff develops customized software applications and automation. *Id.* Vincent Chepkwony is the founder and chief software architect of HeliumCloud. *Id.* ¶ 3. Defendant KWITU, or Kenyan Women Living in the USA, is a New Jersey corporation. *Id.* ¶ 4. KWITU provides opportunities for Kenyan women in the United States to connect via social media platforms, networking meetups, community enrichment programs, and cultural events. *Id.* Defendant Okech is a founder and the current president of KWITU. *Id.* ¶ 7. Defendant Selly is a member and director of KWITU and is involved in the operation and management of KWITU. *Id.* ¶ 8. Defendant Mucangi is a member and director of KWITU and is involved in the operation and management of KWITU. *Id.* ¶ 9. Defendant NuDawn Tech, LLC, transacts business within Maryland, but it is not registered as a business within Maryland, or in any other state. *Id.* ¶ 5. Plaintiff alleges that NuDawn is the "fictitious name of a person or entity who transacts business in Maryland." *Id.* ¶ 6.

### A.  The Business Relationship

Plaintiff alleges that Defendants Okech, Selly, Mucangi and other founders of KWITU gathered at Helium founder Chepkwony's home in December 2018. ECF No. 26-2 ¶ 17. The KWITU Defendants were fascinated with the software systems Chepkwony was building and asked if Chepkwony could provide KWITU with technical systems so that KWITU could increase the exposure and effectiveness of its mission. *Id.* KWITU specifically requested a

---

[2] Unless otherwise stated, the background facts are taken from Plaintiff's proposed Amended Complaint, ECF No. 26-2, and are presumed to be true.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

software system that could announce fundraising campaigns, receive payments from members, track transactions, allow peer-to-peer payments, provide email notifications, and otherwise support KWITU's business objectives. *Id.* ¶ 18.

Chepkwony had already designed a web-based software platform known as "Helium Cloud" that provided many of the functions that KWITU wanted. *Id.* ¶ 19. Chepkwony explained that the Helium Cloud software was his own intellectual property, but it was available for KWITU's use for a fee. *Id.* Interested in using the software, the KWITU Defendants instructed Chepkwony to register the domain www.kwitusks.com, which Chepkwony did on April 12, 2019. *Id.* On May 24, 2019, Chepkwony registered the domain www.heliumcloud.net. *Id.* ¶ 22. Chepkwony explained that, to use the Helium Cloud software, the KWITU Defendants would need to link the KWITU website to the Helium Cloud website. *Id.* ¶ 19. The www.kwitusks.com website was designed to redirect users to www.heliumcloud.net. *Id.*

Plaintiff alleges that the parties understood that they were undertaking a long-term business relationship. *Id.* ¶ 20. In business meetings and in texts and emails, Chepkwony explained to KWITU Defendants that he would be charging a yearly subscription fee for platform operation and maintenance, which was separate from the one-time service of engineering, designing, and developing the Helium Cloud application for KWITU's use. *Id.* ¶¶ 21, 23. On several occasions, Chepkwony disclosed the details of the service he would provide and the pricing structure to the KWITU Defendants. *Id.* ¶¶ 21, 23, 24. In at least two separate emails, Chepkwony informed Defendants that the platform membership fee was $81.96 per user per year. *Id.* ¶ 21, 23. Pursuant to the parties' discussions, Chepkwony began conforming the existing software into a platform for KWITU, which the parties agreed would be managed by Chepkwony on a yearly subscription basis. *Id.* ¶ 20.

On June 17, 2019, Chepkwony formed Plaintiff HeliumCloud, LLC. *Id.* ¶ 25. Chepkwony assigned and transferred to HeliumCloud his rights, title, and interest in and to all software, source code, object code, ideas, know-how, related documentation, website designs and graphics, and related intellectual property rights. *Id.* Chepkwony continues to design, develop, code, and engineer HeliumCloud software. *Id.* ¶ 26.

During a September 2019 meeting between Defendant Okech and Chepkwony, Chepkwony demonstrated how the software worked as a service application. *Id.* ¶ 31. Chepkwony and Defendant Okech also reviewed the terms and conditions of the Non-Disclosure Agreement ("NDA"), reviewed the terms of the Software as a Service Agreement ("SaaS Agreement"), and discussed the continued business relationship between HeliumCloud and KWITU. *Id.*

The NDA applies to confidential information exchanged between HeliumCloud and KWITU regarding "multiple collaborations related to [d]isclosing proprietary [t]echnology belonging to" HeliumCloud. *Id.* ¶ 32. The NDA applies for five years. *Id.* The SaaS Agreement provides KWITU access and use of the HeliumCloud services and constitutes acceptance of all terms and conditions. *Id.* ¶ 33. The SaaS Agreement obligates KWITU to not copy or transfer service or software to another vendor or to use the software for the benefit of anyone other than KWITU. *Id.* The SaaS Agreement prohibits KWITU from selling or distributing any service or software in the Agreement, confirms that Plaintiff retains all right and interest in any intellectual property owned by Plaintiff, and adopts a cost structure that entitles Plaintiff to receive $6.83 per month, or $81.96 per year, per each user of the software application. *Id.* The SaaS Agreement also provides that KWITU will not attempt to reverse engineer or discover the source code for the software or modify or create derivative works based on the software. *Id.* The SaaS

Agreement also applies for a five-year term. *Id.* Before Defendants could access the Helium Cloud software, the system required electronic acceptance of the NDA and the SaaS agreement. *Id.* ¶ 34.

Defendant Okech completed the necessary steps to accept and sign the SaaS Agreement on behalf of herself and on behalf of KWITU. *Id.* ¶ 35. The five-year term for the SaaS Agreement and the NDA therefore expires in September 2024. *Id.* ¶ 37. Defendants Okech, Selly, and Mucangi also completed the steps to individually accept the NDA. *Id.* ¶ 38. The KWITU Defendants began to use the platform immediately, and thus members of KWITU could use the Helium Cloud application to make payments and loans to one another, send email notifications, and create events. *See id.* ¶¶ 18, 34, 43.

**B.  Misappropriation**

From September 2019 until May 2021, the KWITU Defendants and the members of KWITU used the Helium Cloud software. *Id.* ¶ 43. Plaintiff alleges that the platform generated $564,800 for the KWITU Defendants during this time. *Id.* ¶ 41. Plaintiff did not receive any contributions from member-to-member payments; instead, Chepkwony operated and controlled the application in return for subscription fees charged on a per member basis. *Id.* ¶¶ 19, 21, 39, 41, 43. During this time, Plaintiff provided the KWITU Defendants with administrative access to the software so that they could track payments. *Id.* ¶ 43.

In January 2021, Chepkwony became suspicious that some members of KWITU and the KWITU Defendants were engaged in fraudulent activity. *Id.* ¶ 44. Chepkwony had discovered that some members of KWITU were submitting fraudulent credit card disputes to the Helium Cloud payment system. *Id.* Chepkwony immediately alerted KWITU's administrator, Silvia Oloo, and provided screenshots showing fraudulent payment disputes. *Id.* Chepkwony told Oloo

that the KWITU Defendants must immediately investigate the claims. *Id.* When Chepkwony did not hear an update on the situation, he reached out again: "[D]id you act upon that issue[?] It is becoming very serious . . . I will have to take action and impose fee[s]. I will be sending software fee increase[s] beginning next month to cover risks." *Id.* Because the KWITU Defendants were "taking it lightly[,]" Chepkwony was suspicious that they may be involved in fraudulent activity themselves. *Id.*

On March 16, 2021, in violation of the SaaS Agreement, the KWITU Defendants gained an unauthorized view of the source code supporting the Helium Cloud software several times. *Id.* ¶¶ 47, 48. Plaintiff alleges that the KWITU Defendants' access to the source code was "inconsistent with [the KWITU Defendants'] prior and ordinary use" of the software. *Id.* ¶ 48. Later the same evening, Defendant NuDawn registered the domain www.nudawntech.com. *Id.* ¶ 49. The next day, the KWITU Defendants gained unauthorized access to the source code again and this time, Defendants copied the source code. *Id.* ¶ 50. The KWITU Defendants accessed the source code again on April 12 and April 27, 2021. *Id.* ¶¶ 51, 52. On April 27, the KWITU Defendants disconnected the domain link from www.heliumcloud.net to www.kwitusks.com. *Id.* ¶ 52. On April 28, the KWITU Defendants again copied source code from the Helium Cloud software application. *Id.* ¶ 53. Again, they disconnected the domain link. *Id.*

Plaintiff alleges that the KWITU Defendants' unauthorized access and copying of the source code was to develop a web-based software application to replace Helium Cloud. *Id.* ¶ 55. As of April 29, 2021, www.kwitusks.com no longer linked to Plaintiff's Helium Cloud web-based software application located at www.heliumcloud.net. *Id.* ¶ 56.

On May 7, 2021, Defendant KWITU emailed the users of the Helium Cloud web-based software application: "Per our communication on our Facebook page . . . , we have since moved

away from Helium Cloud . . . Please ignore misleading communication from HeliumCloud and avoid making any payment through Heliumcloud.net." *Id.* ¶ 57. The www.kwitusks.com website was changed to state, "KWITU is a NuDawn Tech client and all Website Operations are run [b]y Nudawn Tech." *Id.* ¶ 58. In response, Plaintiff notified Helium Cloud users that www.kwitusks.com was an unsafe domain, intending to protect users from entering personal and financial information on a hacked website. *Id.* ¶ 59. Plaintiff also issued a system notification that members who had paid annual software fees would be refunded. *Id.* ¶ 60. Plaintiff refunded nearly all of the subscription payments. *Id.* ¶ 61.

### C.  Litigation

Plaintiff filed the Complaint on May 17, 2021 against Defendant KWITU and the NuDawn Defendants. ECF No. 1. Plaintiff brought claims of breach of contract, misappropriation of trade secrets, unjust enrichment, tortious interference with a contract, indemnification, and aiding and abetting. *Id.* Plaintiff alleged that KWITU materially breached the NDA and the SaaS Agreement, misappropriated trade secrets, and conspired with the NuDawn Defendants to misappropriate trade secrets. *Id.* ¶¶ 64, 69, 80, 86, 91, 95, 97, 102. Plaintiff alleged that it has incurred lost profits, consequential losses, legal fees, and is entitled to injunctive relief to prevent continued misappropriation and use of Plaintiff's trade secrets. *Id.* at 23.

On May 28, 2021, Plaintiff moved for a temporary restraining order against KWITU to enjoin KWITU's use of Plaintiff's web-based software application and to return all propriety information in KWITU's custody. ECF No. 4. On June 2, 2021, Defendant KWITU filed its own motion for a temporary restraining order, requesting, among other things, that Plaintiff be enjoined from using its website and trade and service marks, and must return all copies of

KWITU's membership database. ECF No. 11. KWITU also filed an Answer and Counterclaims against Helium. *See* ECF Nos. 9, 10. The Court denied both motions for a temporary restraining order, *see* ECF No. 15, and the parties began discovery, *see* ECF No. 21.

On July 20, 2021, Plaintiff filed the Motion for Leave to File an Amended Complaint. ECF No. 26. KWITU opposed the Motion, ECF No. 27, and Plaintiff replied, ECF No. 31. In the proposed Amended Complaint, Plaintiff seeks to add two causes of action, add three individual defendants, and add factual background. *See* ECF No. 26-3. The NuDawn Defendants have not appeared.[4]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012).

## III.    DISCUSSION

The KWITU Defendants oppose the Motion to Amend, arguing that it is prejudicial. ECF No. 27 at 5, 6. In the proposed Amended Complaint, the additions are three new Defendants,

---

[4] The original Complaint included three exhibits. *See* ECF No. 1-1 (Non-Disclosure Agreement); ECF No. 1-2 (the Software as a Service Agreement); ECF No. 1-3 (Defendant Okech's text message acceptance of the agreements). The proposed Amended Complaint references and quotes extensively from these exhibits, *see* ECF No. 26-2 ¶¶ 32, 33, 36, but does not include them. The exhibits are thus incorporated by reference into the Amended Complaint.

Defendant Okech, Mucangi, and Selly, all founders and officers of KWITU, ECF No. 26-2 ¶¶ 7, 8, 9, additional detail supporting Plaintiff's claims of breach of contract, *id.* ¶¶ 32, 33, an additional cause of action for breach of the NDA in particular, *id.* ¶ 83, and an additional cause of action for indemnification under the NDA in particular, *id.* ¶ 125. KWITU argues that its right to a "speedy and efficient resolution" of the matter will be prejudiced by amendment. *Id.* at 3.

The Court finds that Plaintiff has not shown delay or bad faith, and amendment will not be prejudicial. First, Plaintiff has not unduly delayed in seeking amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Plaintiff filed for leave to amend two months after filing the initial Complaint, so Plaintiff's delay is certainly not undue or extreme. In any case, "[a] court may not deny a party's motion to amend solely on the basis of delay; the 'delay must be accompanied by prejudice, bad faith, or futility.'" *Cox v. Barrera*, No. 16-cv-257-GJH, 2019 WL 2270629, at *1 (D. Md. May 28, 2019) (quoting *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643 (4th Cir. 2011)).

Second, amendment would not be prejudicial to KWITU. *See Laber*, 438 F.3d at 427 ("Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."). KWITU argues generally that amendment will prejudice KWITU because the parties have begun discovery. ECF No. 27 at 5. "A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant][.]'" *Laber*, 438 F.3d at 427 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). The Fourth Circuit has noted that, in some cases, allowing amendment during or after discovery could prejudice a party. *See id*. However, "that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). If the

proposed amended complaint "does not put any new facts at issue but merely states an 'alternative theory' for recovery,'" prejudice is likely to be minimal. *Laber*, 438 F.3d at 428. Thus, in *Laber*, the Fourth Circuit allowed a plaintiff to amend his complaint even after summary judgment had been entered: "Any discovery [defendant] did conduct need not be duplicated because Laber's proposed complaint does not put any new facts at issue but merely states an 'alternative theory' for recovery." *Id.* (citing *Foman*, 371 U.S. at 182).

The proposed Amended Complaint does not put any new facts at issue. In the proposed Amended Complaint, Plaintiff adds more detail supporting Plaintiff's allegations that KWITU had breached the SaaS Agreement and the NDA. *See* ECF No. 26-2 ¶¶ 21, 36–40. In the original Complaint, Plaintiff had already alleged that KWITU accepted, and then breached, the SaaS Agreement and the NDA. *See* ECF No. 1 ¶ 56. The proposed Amended Complaint adds more detail to Plaintiff's allegations, but it does not allege any "new" facts, nor change the substance of the allegations.

The two "new" causes of action are also not truly new. In the original Complaint, Plaintiff had alleged breach of contract of the NDA and the SaaS Agreement as one cause of action. *See* ECF No. 1 ¶¶ 49, 50, 56. In the proposed Amended Complaint, Plaintiff splits the cause of action into two: one count for breach of contract of the SaaS Agreement, ECF No. 26-2 ¶ 72, and one count for breach of contract of the NDA, *id.* ¶ 85. Similarly, the other "new" cause of action in the proposed Amended Complaint is a claim for indemnification under the NDA in particular, *id.* ¶ 125, whereas the original Complaint alleged indemnification under both

agreements as one cause of action, ECF No. 1 ¶ 95. Thus, there is no new legal theory in the proposed Amended Complaint.[5]

Next, all of the new Defendants are founders and manage KWITU, and thus they have been on notice of the allegations. Though Plaintiff did not name Okech as a defendant in the original Complaint, Plaintiff did make several specific allegations about Okech's role in the dispute. *See* ECF No. 1 ¶¶ 12, 20, 25. Plaintiff also made allegations about the "KWITU Founders" more broadly in the original Complaint. *See id.* ¶¶ 12, 14. The proposed Amended Complaint names the founders and adds additional detail about their role in Plaintiff's allegations. *See* ECF No. 26-2 ¶ 38.

Finally, Plaintiff has not shown any "bad faith" in seeking amendment. "'[I]n general, courts have concluded that bad faith is a subjective inquiry that requires proof that the moving party acted with intent to deceive, harass, mislead, delay, or disrupt.'" *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. 19-cv-1312-GJH, 2021 WL 1215769, at *20 (D. Md. Mar. 31, 2021) (quoting *Brown v. Pfeiffer*, 2020 WL 1164594, at *3 (D. Minn. Mar. 11, 2020)). KWITU's arguments of bad faith mainly go to dispute over the scheduling of discovery, ECF No. 27 at 5, but KWITU does not show any real evidence of "bad faith" or other dilatory tactics by Plaintiff. Plaintiff's explanation that it discovered evidentiary basis for the amendments, ECF No. 31 at 8, is more plausible than any inference of bad faith. Additionally, the parties have agreed to extend the discovery schedule several times, *see* ECF Nos. 36, 39, 41, during which Defendants have been aware of Plaintiff's proposed Amended Complaint. It is implausible that

---

[5] As Plaintiff points out, ECF No. 26-1 ¶ 6, much of the additional material in the proposed Amended Complaint also appeared in Plaintiff's Motion for a Temporary Restraining Order, which was filed in late May 2021. *See* ECF No. 4. Defendants have thus been on notice of these allegations for the majority of the litigation.

the proposed Amended Complaint "would require the gathering and analysis of facts not already considered by the opposing party[.]" *Johnson*, 785 F.2d at 510.

Thus, the Court finds that there is no bad faith, prejudice, futility, or any other reason to deny the Motion for Leave to Amend. The Motion must be granted so that Plaintiff can "be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

## IV.    CONCLUSION

For the reasons above, the Motion for Leave to Amend is granted, and the Amended Complaint will be docketed as the operative complaint. A separate Order follows.

Dated: <u> March     22, 2022         </u>                    /s/_____
                                                                          GEORGE J. HAZEL
                                                                          United States District Judge